# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CHRISTOPHER SCHAFRICK,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**CAROLYN W. COLVIN,** )<br>**Acting Commissioner of Social Security,** )<br>)<br>**Defendant.** )<br>_____ ) | **CIVIL ACTION**<br><br>No. 13-1402-JWL |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Commissioner's decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

**I.  Background**

Plaintiff applied for SSD benefits, alleging disability beginning October 3, 2009. (R. 21, 152). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. He alleges the Administrative Law Judge (ALJ) erred in weighing the medical opinions of Dr. LaMorgese, a physician who

treated him, erred in assessing Plaintiff's mental residual functional capacity (RFC) because he never explained the weight accorded to Dr. Stientjes's medical opinion, and performed an inadequate credibility determination which is not supported by the record evidence.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error in the Commissioner's decision. It addresses each alleged error in the order presented in Plaintiff's Brief.

## II.     The ALJ's Evaluation of Dr. LaMorgese's Opinions

The ALJ found that Dr. LaMorgese's examinations revealed normal findings in motor function, strength, reflexes, and sensation. (R. 27) (citing Exs. 6F/8-10, 7F/2-4, 9F/14 (R. 346-48, 352-54, 373)). He noted Dr. LaMorgese's statements that Plaintiff is "disabled," and unable to "be gainfully employed," and he accorded "no weight" to those opinions because they relate to issues reserved to the Commissioner, because they are vague, and because they do not correlate to specific functional limitations. (R. 29). The ALJ also noted that on August 30, 2010, Dr. LaMorgese opined that Plaintiff is limited in lifting, standing, walking, kneeling, climbing, and crawling. Id. (citing Ex. 8F (R. 357-58)). He accorded "little weight" to this opinion because it is vague, because it does not contain any modifiers regarding the amount of weight Plaintiff can lift or carry, and because it does not contain any modifiers regarding the time limits Plaintiff is able to stand, walk, kneel, climb, or crawl. Id.

Plaintiff acknowledges that the ALJ is correct that Dr. LaMorgese's opinions regarding disability and employment are on issues reserved to the Commissioner, but

argues that they should nonetheless be weighed in accordance with the regulatory factors for weighing medical opinions. He argues that the reasons given by the ALJ to discount those opinions are not sufficient. (Pl. Br. 14) (citing Fuller v. Astrue, 766 F. Supp. 2d 1149, 1160 (D. Kan. 2011). He then explains how that, in his view, the opinions should have been accorded greater weight, and that in any case the ALJ should have recontacted Dr. LaMorgese for clarification of his opinion.

The court finds no error in the ALJ's treatment of Dr. LaMorgese's opinions. As Plaintiff acknowledges, the opinions regarding disability and employment are opinions on issues reserved to the Commissioner. And, contrary to Plaintiff's view, the ALJ carefully considered Dr. LaMorgese's opinions on these issues, and weighed all of Dr. LaMorgese's opinions in accordance with the regulatory factors. He explained that the opinions regarding disability and employment are on issues reserved to the Commissioner (and, by implication, are unworthy of special significance or of controlling weight). He went on to explain that those opinions are vague and do not relate to specific functional limitations and are, therefore, worthy of no weight. Plaintiff makes no attempt to point to any specificity in those opinions or to suggest functional limitations which Dr. LaMorgese included or implied within the opinions. Moreover, the record supports the ALJ's findings.

The ALJ continued his consideration of Dr. LaMorgese's opinions and noted that Dr. LaMorgese had also opined that Plaintiff is limited in lifting, standing, walking, kneeling, climbing, and crawling. But, the ALJ found that Dr. LaMorgese had not

quantified specific functional limitations regarding the quantity of lifting or carrying of which Plaintiff is capable, or regarding the time to which Plaintiff is limited in standing, walking, kneeling, climbing, or crawling.  Therefore, he concluded that Dr. LaMorgese's opinions in this regard are worthy of little weight.  Again, Plaintiff does not attempt to suggest any specificity in the opinions or to point to functional limitations which Dr. LaMorgese included or implied therein.  And the record supports the ALJ's findings.

Fuller v. Astrue, to which Plaintiff cites, does not require a different conclusion.  In Fuller, the ALJ failed to "evaluate all the evidence in the case record to determine the extent to which [Dr. Koprivica's] opinion [wa]s supported by the record."  Fuller, 766 F.Supp. 2d at 1160 (quoting Soc. Sec. Ruling (SSR) 96-5p).  Here, the ALJ in fact evaluated all the evidence and determined that the opinions regarding disability and employability were worthy of no weight and that the opinion regarding limited abilities was worthy of little weight.  He specifically noted that Dr. LaMorgese's opinions were vague, and that Dr. LaMorgese did not quantify functional limitations.

Moreover, Plaintiff's assertion that the ALJ should have recontacted Dr. LaMorgese is without merit.  As the Commissioner points out, the regulations were changed effective March 26, 2012, giving adjudicators greater flexibility in obtaining information necessary to make a disability determination, and they no longer require that an ALJ first recontact a treating source to resolve an inconsistency or insufficiency in the evidence that source provides to the Social Security Administration.  How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651 (Feb. 23, 2012).

Plaintiff acknowledges that the regulations have been changed and no longer require an ALJ to recontact a treating source, but argues that SSR 96-5p nonetheless requires an adjudicator to "make 'every reasonable effort' to recontact the source." West's Soc. Sec. Reporting Serv., Rulings 127 (Supp. 2014).  Plaintiff's argument ignores that SSR 96-5p was issued July 2, 1996, and that the "Authority" upon which that ruling was based included 20 C.F.R. §§ 404.1512, 404.1520, 404.1527, 416.912, 416.920, and 416.927; West's Soc. Sec. Reporting Serv., Rulings 122 (Supp. 2014); all of which were amended by the final agency action announced in 77 Fed. Reg. 10,651-57.  There is no current authority for Plaintiff to assert that despite the regulatory changes, the ALJ must recontact his treating source.  Moreover, the information in the record evidence was sufficient for the ALJ to make a determination of disability, and he explained his rationale for according little weight to Dr. LaMorgese's opinion.

## III.   The ALJ's Evaluation of Plaintiff's Mental Limitations

Plaintiff claims that the ALJ failed to provide sufficient mental limitations in assessing RFC limitations resulting from his mental impairments.  He argues that this is so because "the ALJ never explained the weight he accorded to the consultative examiner's [(Dr. Stientjes's)] opinion" (Pl. Br. 17), and that Dr. Stientjes's opinion is more restrictive than the limitations assessed by the ALJ.  (Pl. Br. 18).  He recognized the ALJ's conclusion that Plaintiff is able to understand and remember simple instructions, but argues that in light of Dr. Stientjes's report, his diagnosis of somatization disorder precludes a finding that Plaintiff is able to understand and remember simple instructions,

7

and that the record evidence suggests Plaintiff has greater mental limitations than assessed by the ALJ. (Pl. Br. 19-20). The Commissioner argues that the ALJ properly assessed Plaintiff's mental limitations and that Plaintiff is incorrect to argue that the ALJ did not accord weight to Dr. Stientjes's opinion, because the decision demonstrates that the ALJ thoroughly relied upon that opinion. The court agrees with the Commissioner.

Dr. Stientjes performed a psychological evaluation of Plaintiff at the request of the state agency disability determination service and prepared a report of that evaluation. (R. 401-04). The ALJ discussed Dr. Stientjes's evaluation extensively:

> [O]n December 2, 2010, Dr. Stientjes performed a detailed psychological examination. Dr. Stientjes noted that the claimant had good eye contact, but was evasive and argumentative at times. The claimant had no difficulty with serial sevens, but his memory was limited and he performed poorly on number sequencing. However, Dr. Stientjes noted that the claimant espoused numerous somatic complaints and opined that the claimant could function better if he chose to do so. Dr. Stientjes recommended that the claimant engage in psychotherapy for his depression and anxiety. The claimant was diagnosed with somatization disorder and major depression with a GAF of 56 (Ex. 13F [(R. 401-04)]).
>
> However, I note that the claimant has not received any additional psychotherapy or pharmacotherapy. The claimant is no longer taking any medications for his symptoms of depression or anxiety.
>
> Having determined the claimant's mental impairments would be "severe," it is next necessary to consider what limitations, if any, resulted from those impairments. I find the claimant's impairments limit his ability to perform some basic mental work activities. Basic mental work activities are defined as: 1) understanding, remembering, and carrying out simple instructions; 2) making simple, work-related decisions; 3) responding appropriately to supervisors, co-workers, and usual work situations; and 4) dealing with changes in a routine work setting. I have assessed the claimant's limitations in terms of the four broad areas known as the "paragraph B" criteria. The "paragraph B" criteria consist of areas of functioning including: activities

of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.

The claimant reported to Dr. Stientjes that he was independent in his activities of daily living and that he helped his parents out around the home (Ex. 13F). I note that the claimant attributed most of his decrease in functioning to his physical impairments and he did not identify any psychological limitations in performing his activities of daily living. However, based on the combination of the claimant's chronic pain and somatization, I find the claimant would have moderate limitations with regard to his activities of daily living.

The next functional area is social functioning. The claimant testified that he has difficulty getting along with others. Dr. Stientjes noted that the claimant was evasive and argumentative (Ex. 13F). The claimant has not been treated for symptoms of paranoia or panic attacks. He has not required any emergency room treatment for acute bouts of anxiety. However, several sources have noted that the claimant is frequently anxious (Ex. 6F; 7F; 10F; 11F; 17F [(R. 339-356, 378-99, 431-92)]). Overall, the evidence supports a finding that the claimant would have no more than moderate limitations in this domain.

The third functional area is concentration, persistence and pace. In this area, the claimant has a moderate limitation. Dr. Stientjes noted that the claimant had no difficulty with serial sevens, but some difficulty with letter number sequencing and memory (Ex. l3F). However, Dr. Stientjes found the claimant's inattentiveness to be related to his poor motivation. Dr. Stientjes found that claimant had no interest in working and poor prospects for improvement (Ex. l3F). The claimant testified that he watches television daily, with no reported difficulty focusing or concentrating. I have given the claimant substantial benefit of the doubt and find that the claimant would have a moderate limitation in this domain.

Finally, I find the claimant had experienced no episodes of decompensation of extended duration.

(R. 30-31).

The point of Plaintiff's argument seems to be that because the mental symptoms of

a somatization disorder are not intentionally feigned or produced, and because Dr.

9

Stientjes diagnosed Plaintiff with a somatization disorder, it was error for the ALJ to find that Plaintiff could choose to understand and remember simple instructions and could change his attitude to respond to workplace changes.  However, Plaintiff's argument ignores the actual findings of Dr. Stientjes's report.  And, the ALJ's understanding and evaluation is consistent with Dr. Stientjes's report.  Although Plaintiff interprets the report to be inconsistent with the ALJ's evaluation, Plaintiff's interpretation is not compelled.  As the ALJ noted, Dr. Stientjes stated that Plaintiff is inattentive and resistant, and can understand and remember simple instruction if he chooses to do so.  (R. 404).  Dr. Stientjes also stated that Plaintiff's "[r]esponse to workplace changes will require considerable change in attitude."  Id.  He stated that Plaintiff "has no interest in seeking employment."  Id.  It is clear, and the ALJ acknowledged, that Dr. Stientjes diagnosed Plaintiff with somatization disorder.  Nevertheless, it is an appropriate inference from his report that Dr. Stientjes was of the opinion that Plaintiff is able to change his attitude, attentiveness, and resistance if he chooses to do so.  It cannot be error for the ALJ to reach the same conclusions from Dr. Stientjes's report that the doctor reached therein.

     Although it would have been preferable had the ALJ specifically stated that he gave "substantial weight" to Dr. Stientjes's opinion, the discussion quoted above leaves no doubt that the ALJ relied upon that opinion to a great extent.  The ALJ is only required to make his "decision [] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons

for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003)).  He has done so here, and the court will not insist on perfection in opinion-writing.

In support of a final argument that "other evidence of record also suggests that [Mr.] Schafrick's mental limitations are greater than the ALJ concluded," Plaintiff points to his own reports of symptoms contained in outpatient medical records from St. Luke's Hospital, and to findings in Nurse-practitioner Baltz's mental health treatment notes, and argues that the ALJ did not explain how the findings of continuing anxiety and the diagnosis of somatoform disorder would support the ALJ's mental RFC conclusions.  (Pl. Br. 20) (citing (R. 344, 390-91, 434-39, 443-46) (portions of the record evidence contained in Exs. 6F, 10F, and 18F)).  Plaintiff's argument misunderstands the ALJ's decision.  The decision reveals that the ALJ considered the evidence from Exhibits 6F, 10F, and 18F, because he specifically cited to each of these exhibits multiple times in his decision.  (R. 27-30, passim).  And, the ALJ also specifically considered and discussed Nurse-practitioner Baltz's treatment of Plaintiff.  (R. 29).

Moreover, contrary to Plaintiff's argument, and as the court's quotation of the record above reveals, the ALJ explained both how Dr. Stientjes's diagnosis of somatoform disorder, and Nurse-practitioner Baltz's diagnosis of anxiety affected his mental RFC assessment.  (R. 30-31).  He explained that, "based on the combination of the claimant's chronic pain and somatization, I find the claimant would have moderate limitations with regard to his activities of daily living," that because Plaintiff was not

treated for symptoms of paranoia and panic attacks and because "several sources [(including Nurse-practitioner Baltz)] have noted that the claimant is frequently anxious . . .the evidence supports a finding that the claimant would have no more than moderate limitations in" the domain of social functioning (R. 30), and that "I have given the claimant substantial benefit of the doubt and find that the claimant would have a moderate limitation" in the domain of concentration, persistence, and pace. (R. 31). These findings of moderate limitations which are attributed to Dr. Stientjes's and nurse-practitioner Baltz's diagnoses cannot be viewed as insignificant limitations.

The decision makes clear that the ALJ accorded at least a little weight to Plaintiff's reports of anxiety in that he found moderate limitations in social functioning. The decision reveals that the ALJ found Plaintiff's allegations of symptoms are "not fully credible" (R. 27), but that her "partially credible testimony" is worthy of some weight, and he accorded it some weight. (R. 28). The court next addresses Plaintiff's allegation that the ALJ erred in his credibility determination.

## IV. The ALJ's Credibility Determination

Plaintiff claims that although the ALJ considered Plaintiff's lack of treatment since August 2011 and his activities of daily living, the ALJ's credibility determination relied excessively on the objective medical evidence. He also argues that the ALJ's credibility analysis failed to account for Plaintiff's diagnosis of somatoform disorder, erroneously relied upon sporadic activities in considering daily activities, and never inquired into the

reasons for Plaintiff's failure to pursue treatment after August 2011. The Commissioner argues that the ALJ's credibility determination is supported by the record evidence.

The framework for a proper credibility analysis is set out in <u>Luna v. Bowen</u>, 834 F.2d 161 (10th Cir. 1987). An ALJ must consider (1) whether the claimant has established a symptom-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's symptoms are in fact disabling. <u>See</u>, <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1488 (10th Cir. 1993) (explaining the <u>Luna</u> framework). The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating credibility: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii). The court has recognized a non-exhaustive list of factors which overlap and expand upon the factors promulgated by the Commissioner. <u>Luna</u>, 834 F.2d at 165-66. These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).

The court's review of an ALJ's credibility determination is deferential. Credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson, 987 F.2d at 1490 ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston, 838 F.2d at 1133); Hackett, 395 F.3d at 1173 (same).

As noted above, the ALJ found that Plaintiff's allegations of symptoms resulting from his impairments are not fully credible, but are partially credible. (R. 27-28). As Plaintiff acknowledges, the ALJ found that there is an objective basis for Plaintiff's allegations, and he recognized two factors which tend to bolster the credibility of Plaintiff's symptoms: Plaintiff made considerable efforts at relieving his pain and Plaintiff has a fair work history with steady and average earnings. Id.

The court has identified eight reasons given by the ALJ to discount Plaintiff's allegations of symptoms: (1) Plaintiff's subjective testimony of an inability to sit, stand or walk for 5 minutes, a need to lie down, and a need to use an assistive device for ambulation is not supported by the record; (2) Plaintiff's subjective complaints are "significantly out of proportion to the medical findings;" (3) although Plaintiff made considerable efforts to relieve his pain, he did not persist even in the conservative measures recommended by his doctors; (4) Plaintiff testified that the treatment did not provide pain relief, even though he reported significant relief to his doctors; (5) despite numerous examinations of Plaintiff, the records "continued to show minimal clinical signs and findings" (R. 27); (6) Plaintiff had no medical treatment between August 2011, and the hearing on June 6, 2012; (7) Plaintiff's testimony that he performs few chores around the house is not credible because he reported to Dr. Stientjes that he helps his parents around the house and he reported in a functional report that he is able to prepare his own meals, do the laundry, shop, and play card games; and (8) despite plaintiff's testimony that he uses crutches there is no medical evidence supporting the need for an assistive device. (R. 28). The ALJ then explained how he accorded partial credit to Plaintiff's allegations:

> Although the claimant's allegations of total disability are not fully credible, I find the claimant's physical impairments require a reduction of the residual functional capacity. I have determined the claimant's residual functional capacity based on the totality of evidence, including the objective medical findings, the clinical signs and findings on examination as well as the claimant's partially credible testimony. Based on all of the evidence, I find the claimant would be capable of performing a limited range of

> sedentary work. Specifically, the claimant is able to lift and carry ten
> pounds occasionally and frequently. The claimant is able to stand and walk
> two hours in an eight-hour day and sit for six hours of an eight-hour day.
> However, secondary to his chronic pain, he must be able to alternate
> positions in forty-minute intervals as needed. Secondary to his
> degenerative disc disease, the claimant is unable to climb ladders, ropes or
> scaffolds. However, secondary to his obesity, the claimant can occasionally
> stoop, kneel, crouch and crawl. Moreover, the claimant must avoid
> concentrated exposure to unprotected heights, hazardous machinery and
> excessive vibration. Weighing all relevant factors, I find that claimant's
> subjective complaints do not warrant any additional limitations beyond
> those established in the residual functional capacity previously outlined in
> this decision.

(R. 28-29).

Giving the credibility determination the deference it is due, the court finds no error. Plaintiff's claim that the ALJ relied excessively on the objective medical evidence is based upon the fact that a diagnosis of somatoform disorder implies the presence of unfeigned physical symptoms which suggest a general medical condition. Plaintiff cites to the case of Harris-Jackson v. Astrue, No. 11-1411-JWL, 2013 WL 27640, *8 (D. Kan. Jan. 2, 2013), and argues that "the fact that the objective medical evidence does not confirm the physical symptoms does more to suggest that there is a somatoform disorder than it does to suggest that [the claimant] is not credible or that he is feigning or malingering." (Pl. Br. 22) (quoting Harris-Jackson, 2013 WL 27640 at *9). However, in this case Plaintiff ignores the evidence the ALJ relied upon which tends to suggest that although Plaintiff had a somatoform disorder, he was also malingering and feigning some of his symptoms. For example, Plaintiff reported to his health care providers that he received significant pain relief through treatment (R. 304) ("[Plaintiff's] pain is now

16

significantly better"), but he testified that he did not receive relief. Plaintiff did not persist in his attempts to obtain pain relief. Unfeigned pain, even that due to a somatization disorder would tend to lead one to continue to seek relief. Moreover, the ALJ noted that "Nurse Baltz suspected that the claimant was malingering for controlled substances such as benzodiazepines." (R. 29) (citing Ex. 10F/13, 14 (R. 393-94) ("R/O Malingering for benzos")). Moreover, as discussed above, the psychologist who diagnosed somatoform disorder, Dr. Stientjes, stated that Plaintiff is inattentive and resistant, but he can understand and remember simple instruction if he chooses to do so, and Dr. Stientjes implied that Plaintiff can change his attitude. (R. 404). Plaintiff has shown no error in the ALJ's reliance, in part, on the objective medical evidence in making his credibility determination.

Plaintiff's argument that the ALJ erroneously relied upon sporadic activities to discount his credibility is based on Thompson's holding that an "ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." (Pl. Br. 24) (quoting Thompson, 987 F.2d at 1490. The problem with this argument is that the ALJ did not rely on Plaintiff's daily activities alone as substantial evidence that he does not suffer disabling pain. Rather, he relied upon Plaintiff's daily activities as but one of eight factors in determining that his allegations are not fully credible. And, he did find that Plaintiff's allegations are partially credible.

In his final argument, Plaintiff acknowledges that an ALJ may rely on a claimant's failure to seek treatment in discounting that claimant's credibility, but he argues that the

17

ALJ erred when he failed to ask Plaintiff why he did not seek treatment after August 2012. (Pl. Br. 24-25) (citing Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000)). As Plaintiff suggests, it is error for an ALJ to discount a claimant's credibility because of a failure or refusal to follow prescribed treatment without first deciding whether the claimant's failure or refusal "was without justifiable excuse." Frey v. Bowen, 816, F.2d 508, 517 (10th Cir. 1987). Plaintiff argues that he moved "to Kansas between August 2011 and June 2012," was no longer eligible for IowaCare, and therefore was unable to afford treatment, which is a justifiable excuse not to seek treatment.

There are several problems with this argument. First, Plaintiff has not shown that treatment was prescribed and that he either failed or refused to follow that treatment. Therefore, it is by no means clear that the Frey test applies in the circumstances of this case. As Plaintiff seems to admit, the Frey test is inapplicable in a case where the ALJ considers what attempts a claimant made to relieve his pain, and is not presented with a failure or refusal to seek prescribed treatment. Qualls, 206 F.3d at 1372; see also Goodwin v. Barnhart, 195 F. Supp. 2d 1293, 1296 (D. Kan. 2002) (explaining where the Frey test is applicable, and where it is inapplicable). Second, Plaintiff asserts that he moved to Kansas sometime in the ten months "between August 2011 and June 2012," but does not state when he moved, and does not point to record evidence demonstrating that fact. (Pl. Br. 25). Thus, there is no indication the ALJ should have been aware of that fact, and there is no indication what length of time Plaintiff might have had a justifiable excuse not to seek treatment. Moreover, Plaintiff points to no evidence that he sought

free or low cost treatment after his move, or that he made any attempt to secure medical assistance from the state of Kansas. Finally, at the ALJ hearing, Plaintiff testified that he had an IowaCare card, and that he missed one appointment, but he did not explain what followup attempts he pursued, if any. (R. 57). The ALJ knew from Plaintiff's testimony that he had an IowaCare card. There is no basis in the record for the ALJ to question whether there was a justifiable excuse for Plaintiff not to seek medical treatment for his lower back after August 2011.

Plaintiff has shown no error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

Dated this 8th day of January 2015, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**